UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE AT MEMPHIS

THE DEVAULT-GRAVES AGENCY, LLC,

    Plaintiff,

v.     No.: 2:15-cv-02178-STA-tmp

COLLEEN M. SALINGER and MATTHEW R. SALINGER,
As Trustees of the J.D. SALINGER LITERARY TRUST,

    Defendant.

## AMENDED DECLARATORY ACTION AND COMPLAINT FOR DAMAGES

Plaintiff The Devault-Graves Agency, LLC ("Devault-Graves"), for its Amended Declaratory Action and Complaint for Damages against Colleen M. Salinger and Matthew R. Salinger, as Trustees for the J.D. Salinger Literary Trust ("Defendants"), states as follows:

### NATURE OF SUIT

1. This is an action concerning a literary compilation entitled *Three Early Stories (Illustrated)* ("*Three Early Stories*") copyrighted by Devault-Graves. *Three Early Stories* is comprised of three short stories authored by J.D. Salinger: "The Young Folks," "Go See Eddie," and "Once A Week Won't Kill You" (collectively, "the Underlying Stories"), as well as original illustrations commissioned by Devault-Graves.

2. As set forth in detail below, Defendants – acting without any legal basis – have objected to the domestic and international publication and distribution of *Three Early Stories* and

have attempted to thwart Devault-Graves from exploiting its copyright, including by tortiously interfering with Devault-Graves' contractual agreements with foreign publishers.

3. Accordingly, in this action, Devault-Graves seeks a Declaratory Judgment from this Court affirming that Devault-Graves is legally entitled to exploit its copyright for *Three Early Stories* in all countries that have signed the Berne Convention and follow the Rule of the Shorter Term.

4. In addition, Devault-Graves seeks damages for Defendants' tortious interference with its contracts.

## PARTIES & JURISDICTION

5. Devault-Graves is a limited liability company organized under the laws of the State of Tennessee with its principal place of business in Memphis, Tennessee. The members of Devault-Graves are residents and citizens of Tennessee.

6. The J.D. Salinger Literary Trust (the "Trust") is a trust established by J.D. Salinger and into which J.D. Salinger has transferred certain intellectual property rights.

7. Colleen M. Salinger is a trustee for the Trust. Ms. Salinger is J.D. Salinger's widow and, upon information and belief, is a resident of the State of New Hampshire.

8. Mathew R. Salinger is a trustee for the Trust. Mr. Salinger is J.D. Salinger's son and, upon information and belief, is a resident of the State of California.

9. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy exceeds $75,000

10. In addition, jurisdiction and venue are proper in this Court because Defendants purposefully availed themselves of the benefits of doing business in the State of Tennessee. Defendants have authorized the publication of the works of J.D. Salinger in the State of

Tennessee and have realized significant income from such sales. Further, Defendants rely upon Ingram Content Group, based in La Vergne, Tennessee, to distribute Mr. Salinger's works. Thus, the Court's exercise of general jurisdiction is appropriate over Defendants. Moreover, the Court may properly exercise specific jurisdiction over this dispute because the acts and events of this dispute relate to intentional acts of interference with contracts between a Tennessee company and foreign literary agents, contracts which Defendants knew were to be partially performed in the State of Tennessee.

## FACTUAL BACKGROUND

11. At the time of the publication of the Underlying Stories, the extent and duration of copyright protection in the United States was governed by the Copyright Act of 1909. Under the 1909 Act, federal copyright law protected published works from infringement for a period of twenty-eight years from the date of publication. The owner of the work and/or its assigns could renew the copyright for another term of twenty-eight years.[1]

12. The Underlying Stories were published in the 1940s.

13. "Go See Eddie" was originally published in the *University of Kansas City Review* in December 1940. This story was never registered in the U.S. Copyright Office. Thus, it received an initial twenty-eight year term of copyright protection, which expired in December of 1968.

14. Thereafter, "Go See Eddie" fell into the public domain in the United States.

---

[1] The Copyright Act of 1976 and the Copyright Term Extension Act of 1998 increased the length of the renewal term for works copyrighted before 1978 to equal forty-seven years and sixty-seven years, respectively. Because the copyrights in and to the subject works at issue in this case were not renewed, the applicable length of the renewal term is not relevant to this dispute.

15. "The Young Folks" was originally published on February 27, 1940 in the March-April 1940 issue of *Story* Magazine. Story Magazine, Inc. registered that issue of *Story* Magazine with the U.S. Copyright Office under the registration number B 445925.

16. The copyright in and to the March-April 1940 issue of *Story* Magazine was not renewed. The U.S. Copyright Office has no record of such a renewal.

17. Because no renewal was filed, Story Magazine, Inc.'s copyright protection in the March-April 1940 issue of *Story* Magazine, including in "The Young Folks" expired as of February of 1968.

18. Since February of 1968, "The Young Folks" has been in the public domain in the United States.

19. "Once A Week Won't Kill You" was originally published in *Story* Magazine in 1944.

20. Neither Story Magazine, Inc. nor J.D. Salinger ever registered this story in the U.S. Copyright Office.

21. Accordingly, "Once A Week Won't Kill You" received an initial twenty-eight year term of copyright protection, which expired in 1972.

22. Since 1972, "Once A Week Won't Kill You" has been in the public domain in the United States.

23. Devault-Graves is a publishing company based in Memphis, Tennessee. Devault-Graves specializes in rediscovering, and thereafter republishing works which have fallen into the public domain.

24. In 2013, after the release of Shane Salerno's documentary feature *Salinger*, the principals of Devault-Graves began researching whether any of J.D. Salinger's short stories had fallen into the public domain.

25. Attached hereto as **Exhibit A** is a report Devault-Graves commissioned from Patricia A. Rigsbee, a Senior Copyright Research Specialist of the U.S. Copyright Office's Records Research and Certification Section, which confirms the facts upon which Devault-Graves concluded that the Underlying Stories had each fallen into the public domain.

26. Devault-Graves compiled the Underlying Stories into a book titled *Three Early Stories*. Devault-Graves also commissioned illustrations to appear in the collection.

27. Devault-Graves' unique compilation is protected by federal copyright law, and Devault-Graves has a copyright pending with the U.S. Copyright Office for the work.

28. Although the Underlying Stories are clearly in the public domain in the United States because the term of their copyright protection has expired, a separate and independent basis exists to support Devault-Graves's right to exploit the Underlying Stories. The Trust does not own, and has never owned the copyrights in and to the Underlying Stories.

29. On October 24, 2008, J.D. Salinger assigned the copyrights he possessed for his works to the Trust. This assignment was registered with U.S. Copyright Office. A true and accurate copy of the assignment as recorded is attached hereto as **Exhibit B**.

30. The Underlying Stories are not included in this recording.

31. The Trust has not recorded with the U.S. Copyright Office any written document whereby J.D. Salinger has transferred the copyrights in and to the Underlying Stories to the Trust.

32. Upon information and belief, Plaintiff alleges that J.D. Salinger never executed an assignment of the copyrights in and to the Underlying Stories to the Trust.

33. The Trust, accordingly, does not own the copyrights to the Underlying Stories and has no legal right to object to their publication and sale.

34. On May 21, 2014, Amazon.com made available *Three Early Stories* for sale as an e-book on its website. Approximately one week after *Three Early Stories* became available on-line, Defendants filed a complaint with Amazon.com erroneously asserting that publication of *Three Early Stories* violated the Trust's copyrights.

35. Defendants eventually withdrew their objection to the publication and sale of *Three Early Stories* on Amazon.com, conceding that the Trust did not own the copyrights to the Underlying Stories and that they did not have any legal basis to block the publication and sale of *Three Early Stories* within the United States. In a letter dated June 2, 2014 from Defendants' attorney Daniel J. O'Neill to Devault-Graves then-attorney William Parks, Defendants acknowledged that they withdrew their objection to Amazon.com and stated, "We trust this ends this matter." A copy of this letter is attached hereto as **Exhibit C**.

36. In a letter dated December 12, 2014 from Defendants' attorney Cynthia Arato to Mr. Parks, Defendants reaffirmed that they "do not seek to halt any U.S. exploitation." A copy of this letter is attached as **Exhibit D**.

37. Based on the success on the e-book version of *Three Early Stories*, Devault-Graves published a paperback version of the work for sale in the United States.

38. Devault-Graves also began making arrangements with foreign publishers and literary agents to publish and sell *Three Early Stories* internationally. To this end, Devault-Graves entered in to contracts with various foreign publishers and agents throughout the world.

39. Despite acknowledging Devault-Graves's lawful right to publish and sell *Three Early Stories* within the United States, Defendants have aggressively campaigned to prevent Devault-Graves from exploiting its copyright internationally. Defendants, through their various attorneys and agents, have contacted foreign publishers and literary agents by letter and email asserting that publication of *Three Early Stories* violates Defendants' purported foreign copyrights in the Underlying Stories. Defendants have threatened legal action against these publishers and agents if they assist Devault-Graves with the publication and sale of *Three Early Stories*.

40. For example, on October 3, 2014, Defendants' Italian literary agent, Stefania Fietta, sent an email to Paul Sebes of the Sebes & Van Gelderen Literary Agency ("Sebes & Van Gelderen"), an agency Devault-Graves contracted with to assist in the foreign publication and sale of *Three Early Stories*. In the email, the Trust claimed to hold the copyrights for the Underlying Stories under Italian law and asserted that any publication of *Three Early Stories* in Italy would require Defendants' permission. This email is attached as **Exhibit E**.

41. In addition, on November 14, 2014, Defendants' attorney Cynthia Arato sent a letter to Mr. Sebes, claiming the Trust's foreign ownership of the Underlying Stories and threatening litigation against Sebes & Van Gelderen if it continued assisting Devault-Graves in the foreign publication of *Three Early Stories*. This letter is attached as **Exhibit F**.

42. Defendants have sent similar correspondence regarding *Three Early Stories* to other foreign literary agents and publishers in a deliberate attempt to prevent Devault-Graves from exploiting its copyright aboard.

43. Defendants' intimidation tactics have unfortunately been successful. As a result of Defendants' wrongful interference with Devault-Graves' contracts with foreign literary agents

7

and publishers, several of Devault-Graves' foreign agents and publishers have delayed or suspended publication of *Three Early Stories* or terminated their contracts with Devault-Graves. Consequently, Devault-Graves has lost hundreds of thousands of dollars in advance payments and potential sales revenue.

## COUNT I
## (<u>Declaratory Action</u>)

44. Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

45. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Devault-Graves seek a declaratory judgment from this Court that Devault-Graves is legally entitled to exploit its copyright for *Three Early Stories* in all countries that have signed the Berne Convention and follow the Rule of the Shorter Term.

46. The Berne Convention, established in 1886, is an international agreement governing copyright. The Berne Convention is binding on its signatories, and the United States ratified the Berne Convention in 1988.

47. Article 7 of the Berne Convention governs the term length for the copyright protection of a work. Article 7 holds, "In all cases, the term shall be governed by the legislation of the country where protection is claimed; however, unless the legislation of that country otherwise provides, the term shall not exceed the term fixed by the country of origin of the work." Berne Convention, art. 7(8). This is known in copyright law as the Rule of the Shorter Term, which provides that in foreign jurisdictions the term of a work's copyright shall not exceed the term of the work's copyright in the country of origin. The Berne Convention, under

Article 7, mandates the application of the Rule of the Shorter Term unless a signatory country's domestic laws provide otherwise.

48. As set forth above, the Underlying Stories are in the public domain in the United States, their country of origin. In countries that apply the Rule of the Shorter Term, the Underlying Stories are also in the public domain. Devault-Graves, therefore, is legally entitled to exploit its copyright in and to *Three Early Stories* in these countries, just as it is legally entitled to exploit its copyright in the United States.

49. Alternatively, Devault-Graves seeks a declaratory judgment from this Court that Defendants and the Trust may not interfere with, or otherwise attempt to prevent Plaintiff's exploitation of its copyright in and to *Three Early Stories* because the Trust does not own the copyrights in and to the Underlying Stories.

## COUNT II
### (Tortious Interference with Contract and Business Relationships)

50. Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

51. Devault-Graves had contracts and business relationships with certain specifically identifiable foreign publishers and literary agents for the foreign publication and sale of the *Three Early Stories*.

52. Defendants had specific knowledge of these contracts and relationships.

53. Defendants, in an effort to prevent Devault-Graves from lawfully exploiting its copyrights, intentionally, maliciously, and recklessly sent correspondence to Devault-Graves's foreign publishers and literary agents to induce those parties to breach and/or terminate their contracts with Devault-Graves and to prevent entirely the foreign publication of *Three Early Stories*.

54. As a proximate cause of Defendants' actions, several parties breached and/or terminated their contracts with Devault-Graves, and Devault-Graves has been unable to publish Three Early Stories in foreign countries where Devault-Graves has a legal right to do so.

55. These breaches have caused Devault-Graves monetary loss and other damages, including damage to Devault-Graves's reputation. In addition, Devault-Graves has lost its ability to sell *Three Early Stories* in foreign markets, costing Devault-Graves hundreds of thousands of dollars in lost potential revenue.

56. Defendants' tortious interference with Devault-Graves' contracts and business relationships violate Tennessee common law and Tennessee Code Section 47-50-109.

WHEREFORE, PREMISES CONSIDERED, Devault-Graves prays:

a. That this Court enter a Declaratory Judgment affirming that Devault-Graves is legally entitled to exploit its copyright for *Three Early Stories* in all countries that have signed the Berne Convention and follow the Rule of the Shorter Term;

b. That this Court enter a Declaratory Judgment affirming that Defendants and the Trust may not interfere with, or otherwise attempt to prevent Plaintiff's exploitation of its copyright in and to *Three Early Stories* because the Trust does not own the copyrights in and to the Underlying Stories.

c. That a jury be empaneled to try Devault-Graves's common-law and statutory tortious interference with contract claims;

d. That Devault-Graves be awarded compensatory damages in an amount to be determined by a jury;

e. That Devault-Graves be awarded punitive damages;

10

  f. That Devault-Graves be awarded treble damages under Tennessee Code Section 47-50-109;

  g. That Devault-Graves be awarded post-judgment interest as well as all discretionary costs and other relief to which it may be entitled; and

  h. That Devault-Graves be awarded such other relief, both general and special, to which it may be entitled.

          Respectfully submitted,

          BURCH, PORTER & JOHNSON, PLLC

          /s/ Taylor A. Cates
          Taylor A. Cates (#20006)
          Charles Silvestri Higgins (#30184)
          130 North Court Avenue
          Memphis, Tennessee 38103
          Phone: (901) 524-5000
          Fax: (901) 524-5024
          Email: tacates@bpjlaw.com
          Email: chiggins@bpjlaw.com

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing has been served on Cynthia S. Arato/Daniel J. O'Neill, Shapiro Arato LLP, 500 Fifth Avenue, 40th Floor, New York, NY 10110, via the ECF filing system, this 22nd day of June, 2015.

          /s/ Taylor A. Cates
          Taylor A. Cates